## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 0:17-CV-61265-BB

|  |  |
|---|---|
| DENNIS HAYNES, | ) |
| Plaintiff, | ) |
| vs. | ) |
| BRINKER INTERNATIONAL, INC., | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT BASED ON MOOTNESS BECAUSE OF AN EXISTING REMEDIATION PLAN WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Brinker International, Inc. ("Defendant" or "Brinker"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), moves this Court to dismiss the Complaint.

## INTRODUCTION

The instant lawsuit arises from alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, (the "ADA"), allegedly suffered by Plaintiff, Dennis Haynes ("Plaintiff"), when he allegedly visited Brinker's website located at www.chilis.com. Plaintiff asserts a single claim for injunctive relief, declaratory relief, and attorneys' fees against Brinker.

Plaintiff's lawsuit is based on a single allegation: that Brinker's website is inaccessible to blind customers like him. Setting aside the issue of whether website access is even required under the ADA (an issue over which cases diverge), this case should be dismissed because Brinker faced an identical lawsuit and developed and implemented a remediation plan for its website following the settlement of that lawsuit in March 2017. The remediation plan has since

been implemented and an updated website was released on April 18, 2017.  Brinker believes that the any barriers to access have been removed and the website is currently accessible.  Even if there are some remaining accessibility issues, Brinker's actions show that it has taken measures in furtherance of the remediation plan.

Plaintiff is aware of the previous case, the terms of the settlement of the case, Defendant's agreement to remediate the website pursuant to that settlement, and the execution of the remediation plan.  Plaintiff nevertheless continues to pursue this case seeking the same relief Defendant has already agreed to plus his attorneys' fees and costs.  The case law is clear that under the circumstances, there is no live case or controversy, and the claim must be dismissed for lack of subject matter jurisdiction.  As discussed in more detail below, Judge Scola recently granted a Motion to Dismiss another lawsuit by this same Plaintiff under circumstances identical to these.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff is blind and uses the internet using screen reader software.  Compl. ¶ ¶1-2.  Brinker owns and operates restaurants under the name of Chili's Grill & Bar.  *Id.* ¶ 4.  Brinker also operates a website located at www.chilis.com (the "website").  *Id.* ¶ 5.  Although Plaintiff does not allege he has ever visited any brick and mortar Chili's Grill & Bar location, Plaintiff asserts he was unable to fully access the website and, therefore, Brinker has subjected him to discrimination in violation of Title III of the Americans with Disabilities Act (ADA). *Id.* ¶¶ 10-11.

In November 2016, Brinker was subject in this same district to an identical lawsuit to the present one, also alleging failure to provide an accessible website to a blind individual.  *See Juan Carlos Gil v. Brinker International, Inc.*, Case No. 1:16-cv-24805-RNS (the "*Gil*

Lawsuit").[1]  The *Gil* Lawsuit was settled on March 21, 2017, and an order of dismissal was entered on April 7, 2017. *See* Docket for the *Gil* lawsuit.

The settlement agreement for the *Gil* Lawsuit was executed March 21, 2017. *See* Settlement Agreement attached hereto as Exhibit A (with the portion relating to monetary payment redacted).  As part of the settlement in that case, Brinker agreed to put an accessibility notice on its website within 6 months and agreed to improve the accessibility of its website by the end of 2020 by having it substantially conform with WCAG 2.0 Level A as a guideline in making such improvements. *See* Exhibit A at ¶ 17.  Thus, under the settlement in the *Gil* Lawsuit, Brinker had until the end of 2020 to remediate its website.

Following the *Gil* Lawsuit, Brinker developed a comprehensive plan to improve the accessibility of the website. Erdman Aff. ¶ 5.[2]  Brinker has since implemented the remediation plan and substantially updated the website to comply with WCAG 2.0 Level A. ¶ 8.  Erdman Aff. ¶ 8.  On April 18, 2017, Brinker released its updated website.  Erdman Aff. ¶ 9.  Brinker's IT Director believes that any barriers to access have been removed and the website is currently accessible. Erdman Aff. ¶ 10.  Even if there are some remaining accessibility issues to be worked out, Brinker clearly has taken steps in furtherance of a remediation plan and plans to continuously monitor the website and address issues relating to accessibility as it becomes aware of them. Erdman Aff. ¶ 13.  Brinker has also undeniably complied with the first aspect of its remediation plan by placing an accessibility notice on its website. *See* https://www.chilis.com/web-accessibility.

---

[1]   Plaintiff is clearly aware of the *Gil* lawsuit as he identified it in the Verified Statement Regarding Prior Filings Under the ADA that he filed with the Court on July 25, 2017.  [Dkt. 10].

[2]   "Erdman Aff." refers to the affidavit of Michael Erdman, Brinker's IT Director – eCommerce and Digital Technology, attached hereto as Exhibit B.

Prior to moving to dismiss, the undersigned emailed Plaintiff's counsel and provided him with a copy of the settlement agreement in the *Gil* Lawsuit. The undersigned advised that Plaintiff had an obligation to dismiss this case because there was no subject matter jurisdiction based on the pre-existing remediation plan. The undersigned further reminded Plaintiff's counsel that this Court recently granted a motion to dismiss under the same set of circumstances in Plaintiff's lawsuit against Hooters of America, LLC, Case No. 0:17-cv-60663-RNS. In that case, this Court held that the website-inaccessibility lawsuit was moot because, like here, there was a pre-existing remediation plan from a settlement between Hooters and the plaintiff in an earlier-filed suit. The undersigned provided Plaintiff's counsel with a copy of the order. Finally, the undersigned advised that Defendant would seek all available remedies if it were forced to file an unnecessary motion to dismiss. *See* email between Tasos C. Paindiris, *Esq.*, Aaron Finesilver, *Esq.* and Thomas B. Bacon, *Esq.* dated July 30, 2017 attached hereto as Exhibit C.

On August 2, 2017, after follow up by the undersigned, Plaintiff's counsel responded that he disagreed with the order in the Hooters case, asked for clarification as to the status of the website, as well as demanded his fees and costs. On the same day, the undersigned advised that the remediation plan had already been implemented and that Brinker believes the website is in compliance. The undersigned further requested that Plaintiff's counsel advise whether Plaintiff was still having trouble accessing the website, as well as the date in which Plaintiff visited the website. Plaintiff's counsel did not respond to this email or provide the requested information. Therefore, on August 4, 2017, the undersigned advised that Brinker would be moving forward with its motion to dismiss if Plaintiff did not agree to withdraw the lawsuit. *See*, emails between Tasos C. Paindiris, *Esq.*, Aaron Finesilver, *Esq.* and Thomas B. Bacon, *Esq.*

dated July 30, 2017 through August 4, 2017 attached hereto as Exhibit D.  To date, Plaintiff has

not withdrawn his lawsuit or provided the requested information.

**ARGUMENT AND MEMORANDUM OF LAW**

I.      **THIS CASE IS MOOT AND THE COURT LACKS SUBJECT MATTER JURISDICTION AS A RESULT OF DEFENDANT'S PRE-EXISTING VOLUNTARY REMEDIAL PROGRAM TO REMOVE THE BARRIER ALLEGED BY PLAINTIFF**

   A.      **Standard for Assessing Subject Matter Jurisdiction**

            The Eleventh Circuit has held that a motion to dismiss pursuant to Federal Rule of

Civil Procedure Rule 12(b)(1) can either be a facial or factual attack.  *Stalley ex rel. U.S. v. Orlando*

*Regional Healthcare System, Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008); *Morrison v. Amway*

*Corp.,* 323 F.3d 920, 924 n.5 (11th Cir. 2003).  In a facial attack, the court assumes the allegations

in the complaint to be true and determines whether the plaintiff has alleged a sufficient basis for

subject matter jurisdiction.  *Plunkett v. Poyner,* No. 08-60953-CIV, 2009 U.S. Dist. LEXIS 118823

at *5-6 (S.D. Fla. Aug. 12, 2009).  However, in factual attacks the existence of subject matter

jurisdiction is being challenged in fact, regardless of the pleadings, and a district court may

consider extrinsic evidence such as testimony and affidavits.  *Makro Capital of Am., Inc. v. UBS*

*AG,* 543 F.3d 1254, 1258 (11th Cir. 2008).  Additionally, in factual attacks this Court is not bound

to assume that the allegations in the complaint are true.  *Id.*  Moreover, "in the face of a factual

challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction

exists."  *OSI, Inc. v. U.S.,* 285 F.3d 947, 951 (11th Cir. 2002).

   B.      **The Court Lacks Subject Matter Jurisdiction Because The Complaint is Moot Based on a Pre-Existing Remediation Plan**

            Mootness is a jurisdictional defect that can be raised at any time by the parties or

the court *sua sponte*.  *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365

5

(S.D. Fla. 2006) (*citing Barilla v. Ervin*, 886 F.2d 1514, 1519 (9th Cir. 1989)).[3] A claim is moot if it has lost its character as a "present, live controversy." *Id.* (*citing United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 698 (9th Cir.1984)).   A court cannot take jurisdiction over a claim to which "no effective relief can be granted." *Id.*   In the context of a claim alleging barriers to access under Title III of the ADA, "if an ADA 'plaintiff [has] already received everything to which [he] would be entitled, *i.e.,* the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that plaintiff will again be subjected to the same wrongful conduct by this defendant.'" *Id.* (citing *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065 (D. Hawaii 2000).

Multiple courts in Florida have held that where the defendant has remedied a barrier to access alleged by the plaintiff – or developed a plan to do so before the suit was filed – this renders the claim moot and divests the court of jurisdiction.

For example, in *Casa Marina*, the defendant took over a resort property and developed detailed renovation plans. *Id.* at 1363. The plans included updating various areas of the facility to bring them into compliance with the ADA.  *Id.* at 1364. The plaintiff sued the resort, alleging multiple barriers to access. In response, the defendant provided the plaintiff with proof that the resort had developed a renovation plan which included barrier removal. *Id.* at 1361-65. When the plaintiff refused to withdraw his complaint, the court not only dismissed the claim with prejudice, but entered sanctions against the plaintiff. The court held that "defendant's remedial plan, which existed prior to Plaintiffs filing their lawsuit, renders Plaintiffs' claims moot, as a

---

[3]     This decision was vacated by agreement after the parties settled the case on appeal.  *See Access 4 All, Inc. v. Casa Marina Owner, LLC*, 264 Fed. Appx. 795 (11th Cir. 2008).  As a result, Judge King (who authored *Casa Marina*) subsequently made a point to note that *Casa Marina* remains good law and is, in fact, "particularly instructive" on the issue of mootness in the context of ADA Title III matters.  *Kallen v. J.R. Eight, Inc.,* 775 F. Supp. 2d 1374, 1378 (S.D. Fla. 2011).

matter of law, and subjects Plaintiffs' Complaint to dismissal." *Id.* at 1364-65. The court concluded that the plaintiff should have investigated whether such a plan was in place prior to filing the lawsuit, and certainly was under a duty to cease the litigation once the plaintiff was advised of the remediation plan. *Id.* at 1367. Because the plaintiff refused to withdraw his claim, the court dismissed the complaint with prejudice, and granted sanctions, holding the "lawsuit is nothing more than an attempt to extort fees from Defendant." *Id.* at 1368.

In 2011, Judge King similarly dismissed claims alleging barriers to access which had been remedied. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011). The court held that "[b]ased on the same reasoning as in *Casa Marina* . . . [b]ecause the Parties agree that Defendant has remedied [some] of the deficiencies alleged in the Amended Complaint, the Court finds that those [ ] claims are rendered moot and subject to dismissal for lack of jurisdiction." *Id.* The court again sanctioned the plaintiff for continuing to maintain his lawsuit even after being advised that the claim was moot, holding "like in the *Casa Marina* case . . . Plaintiff's counsel was 'expressly advised' of the remedial action taken which ultimately rendered Plaintiff's claims moot. Plaintiff was so 'expressly advised' before the filing of the Amended Complaint, but filed the Amended Complaint anyway." *Id.* at 1381.

### C. This Court Recently Granted a Motion to Dismiss Under the Exact Same Circumstances Present Here.

Recently, this Court relied on *Casa Marina* and *Kallen* and dismissed as moot another website-inaccessibility lawsuit filed by this Plaintiff with the same attorneys representing him. *Haynes v. Hooters of America, LLC*, 2017 U.S. Dist. LEXIS 91048 (S.D. Fla. June 14, 2017).[4] Plaintiff made the same claims regarding Hooters' website as he is making about Brinker's website. Like Brinker, Hooters already had a remediation plan for its website in place as a result

---

[4] Plaintiff is appealing the decision.

of a settlement with a different plaintiff in an earlier-filed suit.  In the prior settlement agreement, Hooters agreed to remedy all of the website inaccessibility issues raised by Haynes.  Judge Scola stated that "[o]rdering [defendant] to do what it has already agreed to do affords [plaintiff] no meaningful relief." *Id.* * 3-4.  Thus, this Court dismissed Plaintiff's lawsuit for lack of jurisdiction due to mootness. *Id.* * 5.

Plaintiff's complaint is virtually identical to the earlier filed *Gil* case and Plaintiff is seeking the same remedial measures that were ultimately agreed to in *Gil*.  In response to Plaintiff's argument that he should not be affected by a settlement agreement to which he is not a party, Judge Scola wrote: "while it is true that Haynes cannot be bound by the [previous] settlement agreement, this does not mean that the settlement agreement has otherwise failed to resolve Haynes's claim." *Id* * 1.  "The existence of the remedial plan, agreed to in the settlement, means that the plaintiff has already received everything to which he would be entitled, if his lawsuit were successful, leaving nothing for this Court to determine." *Id* * 1-2 (internal quotations and citations omitted).  The Judge concluded that "there ceases to be a live controversy" where the Defendant "has agreed to remedy, in accordance with a binding settlement agreement…all of the website inaccessibility issues" that Plaintiff complains of. *Id* *2.

Other Florida district courts have issued similar rulings. *See Nat'l Alliance for Accessibility, Inc. v. Walgreen Co.,* No. 3:10-CV-780-J-32-TEM, 2011 U.S. Dist. LEXIS 136171 at *8-10 (M.D. Fla. Nov. 28, 2011) (citing eight separate cases in support of its decision, dismissing the case as moot, and denying the plaintiff's claim for fees); *Nat'l Alliance for Accessibility, Inc. v. Cont'l Foods, Inc.,* No. 3:11-cv-240-J-20JBT, 2012 U.S. Dist. LEXIS 125220 (M.D. Fla. Apr. 11, 2012).

Here, the settlement agreement attached as Exhibit A clearly establishes that an existing remediation plan was in place before this lawsuit was filed. Further, the remediation has since been implemented and an updated website was released on April 18, 2017. Erdman Aff. ¶¶ 6-9. Brinker believes that the any barriers to access have been removed and the website is currently accessible. Erdman Aff. ¶¶ 10-12. It is also indisputable that Brinker has already fully complied with the first aspect of the remediation by placing an accessibility notice on its website. *See* https://www.chilis.com/web-accessibility.

Under the circumstances, where it is undeniable that a pre-existing remediation plan was in place prior to suit and has since been implemented, this claim is moot. As Plaintiff's claim is moot, the Complaint should be dismissed.

## CONCLUSION

The Court should dismiss this case on mootness grounds because Brinker had a remediation plan in place before this lawsuit was filed, which has been implemented.

Dated this 4th day of August, 2017,

> Respectfully submitted,
>
> JACKSON LEWIS P.C.
> 390 N. Orange Avenue
> Suite 1285
> Orlando, FL 32801
> Telephone: 407-245-8440
> Facsimile: 407-246-8441
>
> By:    */s/ Nicole A. Sbert*
> Tasos C. Paindiris
> Florida Bar No. 41806
> Tasos.Paindiris@jacksonlewis.com
>
> Nicole A. Sbert
> Florida Bar No. 0896861
> sbertn@jacksonlewis.com
>
> *Attorneys For Defendant*
> *Brinker International, Inc.*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of August, 2017, I filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronic Notices of Filing.

*/s/ Nicole A. Sbert*
Nicole A. Sbert

## SERVICE LIST

Aaron Scott Finesilver, Esq
Florida Bar No. 577022
Email: aaron@finesilverlaw.com
THOMAS B. BACON, P.A.
100 N. Biscayne Boulevard
Suite 1300
Miami, FL 33132
Telephone:  305-702-8355
Facsimile::  305-503-7374

*Attorneys for Plaintiff*

Tasos C. Paindiris
Florida Bar No. 41806
Tasos.Paindiris@jacksonlewis.com
Nicole A. Sbert
Florida Bar No. 0896861
sbertn@jacksonlewis.com
JACKSON LEWIS P.C.
390 N. Orange Avenue - Suite 1285
Orlando, FL  32801
Telephone:  407-245-8440
Facsimile:   407-246-8441

*Attorneys for Defendant*

# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is entered into by and between Juan Carlos Gil ("Plaintiff"), and Defendant Brinker International, Inc. ("Defendant") (collectively known as "Parties" and each individually a "Party"). The Agreement is effective on the date last signed by the Parties (the "Effective Date").

This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action as follows:

### RECITALS

**WHEREAS,** Plaintiff initiated a lawsuit in the United States District Court for the Southern District of Florida, Civil Action No. 1:16-cv-24805-RNS (the "Lawsuit") against the Defendant under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("Title III of the ADA") and Electronic Communications Privacy Act 18 U.S.C. § 2510 et. at., in which Plaintiff alleged that he was unable to access and use the website, www.chilis.com (the "Website") because it did not integrate with the screen reader software he was using and that the website did not provide other means of access for the visually impaired;

**WHEREAS,** Defendant disputes the allegations set forth above and in the Lawsuit and denies the Website is in violation of Title III of the ADA as well as all other allegations of wrongdoing; and

**WHEREAS,** the Parties desire to settle the Lawsuit and avoid further costs, and uncertainty of current or future litigation.

**NOW THEREFORE,** in consideration of the foregoing recitals, and the mutual promises, covenants and undertakings contained herein and incorporated into this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties HEREBY agree to the following terms and conditions as a full and complete settlement of the Lawsuit and any and all claims related to the Lawsuit:

1. **Recitals.** The aforementioned Recitals are incorporated into this Agreement.

2. **General Release.** In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Plaintiff t, on behalf of himself and any of his agents, employees, representatives, assigns, heirs, executors, trustees, and partners (the "Releasing Persons"), hereby releases, acquits, satisfies, and forever discharges the Defendant named herein, together with the Defendant's parent and subsidiary entities; their respective officers, directors, servants, employees, agents, attorneys, members and constituents and

other representatives; and their underwriters and insurers ("Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits, including those arising from or relating to the Lawsuit or Plaintiff's alleged visits to the Website, which Plaintiff may have, may have had, or may hereafter raise against the Released Parties, whether known or unknown, including any violation of any United States, state, province, or local law, and any and all claims which were alleged or could have been alleged in the subject Lawsuit, including without limitation claims for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost including compensatory, punitive, and any other damages, if any, through the Effective Date of this Agreement ("Released Claims"), with the exception of the amount required to be paid by the Defendant pursuant to paragraph 3 of this Agreement.

3.      **Attorneys' Fees, Costs, Expenses, and Payments.**



4.      **Confidentiality.** The Parties and their respective counsel warrant that all the provisions of this Agreement will remain in strict confidence and that no copy of this Agreement shall be filed with any court, or disclosed to any persons or entities, except where disclosure is required by applicable law, court order or subpoena compelling disclosure. The Parties and their counsel agree to refrain from making any statements about the Lawsuit, the allegations contained therein, or this Agreement. The Parties may, however, in the ordinary course of business, disclose such information to its attorneys, accountants, boards, assignees, or prospective purchasers, to other persons as required to effectuate the terms of this Agreement.

5.      **Invalidation.** If any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect, provided that the Parties may still effectively realize the complete benefit of the promises and considerations conferred hereby.

6.      **Scott R. Dinin, P.A.'s Obligation to Assist Defendant.** For two (2) years from the Effective Date of this Agreement, if Defendant receives any inquiries or letters, threatened lawsuits or threatened investigations, or actual lawsuits or investigations from any parties after the Effective Date (including, without limitation, individuals, numerous individuals, purported classes, other counsel, advocacy groups, and/or government regulators) relating to the alleged inaccessibility of the Website, Scott R. Dinin, P.A. shall be obligated to use best, good faith efforts, at Defendant's written request, to assist and cooperate in the prevention of the additional website claims from being brought against Defendant, or to assist in extinguishing and/or achieving the dismissal, removal, or rescission of such additional potential website claims that may be brought against Defendant. These efforts shall include, but are not limited to: contacting the parties involved in the additional potential website claims (e.g., regarding terms of the Agreement Defendant approves for disclosure; Defendant's commitment to making the Website accessible; and Scott R. Dinin, P.A.'s reputation and experience with website accessibility matters); assisting in the preparation of necessary documentation (including, but not limited to, court or regulatory filings) and/or providing other reasonable or necessary assistance to Defendant (excluding travel that exceeds 25 miles from Miami, Florida 33127) should Scott R. Dinin, P.A. needs to explain this Agreement and its terms to another party,

regulator, or Court. The Parties agree that this obligation on Scott R. Dinin, P.A. is a material term of this Agreement and a primary consideration for Defendant entering into the Agreement.

7.     **Drafting.**  The Parties acknowledge that both Plaintiff and Defendant participated in drafting and reviewing this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting Party shall not be employed against either of the Parties in the interpretation of this Agreement.

8.     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements and communications, whether written or oral, previously made in connection with the such matters.  Any agreement to amend or modify the terms or provisions of this Agreement must be in writing and executed by both of the Parties hereto.  No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged.

9.     **Non-Admission of Liability.**  Neither this Agreement nor anything contained herein shall constitute or is to be construed as an admission by Defendant, any Released Parties, or any officer, contractor or agents of Defendant or any Released Parties of a violation of any federal, state or local statute, law, regulation, code, or ordinance (including Title III of the ADA), or any legal, common law or equitable duty owed by Defendant to anyone, or as evidence of any other liability, wrongdoing, or unlawful conduct.  The Parties acknowledge that this Agreement has been entered into by the Parties to avoid the costs and expenses of continued litigation and to settle disputed claims and that Defendant had meritorious defenses to the Plaintiff's allegations.

10.     **Dismissal/No Other Proceedings.**  Plaintiff represents that he has not filed or participated in any complaints, claims or actions against Defendant or the Released Parties with any state, federal or local agency, court, or to their tribunal other than the Lawsuit, and that Plaintiff will not do so at any time hereafter regarding any other claims relating to the Website arising under the Title III of the ADA or any other statute, law, regulation, code or ordinance which may have arisen prior to the Effective Date. Within seven (7) days from the Effective Date of this Agreement, the Plaintiff expressly agrees to file a Consent Judgment (attached to this Agreement as Exhibit A).  The Parties further agree that this Agreement shall not be filed with the Court, except as necessary for enforcement purposes, or unless otherwise required by the Court.

11.   **Binding Nature of Settlement Agreement.**  This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of each Party and to its respective heirs, administrators, representatives, executors, successors, and assigns.

12.   **Covenant Not to Sue.**  Plaintiff agrees that neither he, nor any other organization that he is or may be working with, or affiliated with, will commence, participate or assist in any action relating to Title III of the ADA or any other federal, state, or local statute, law regulation, code or ordinance, against the Defendant with respect to the Website. Plaintiff further agrees that he shall not at any time, directly or indirectly solicit or suggest to any third party that it commence any such action.

13.   **Authority.**  Each Party represents that each person, or authorized counsel, executing this Agreement on its behalf has been authorized to sign on behalf of the respective Party and to fully bind it to the terms of this Agreement and that the respective Parties have the power and authority to perform their respective obligations as provided by this Agreement.

14.   **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and Title III of the ADA (where applicable) without regard to principles of conflicts of law. Any suit arising as a result of a breach of this Agreement shall be filed in the Federal Court for the United States for the Southern District of Florida.

15.   **No Knowledge of Potential Claimants.**  Plaintiff and Releasing Parties represent and warrant that none of them are aware of any potential plaintiff, putative class member, or counsel, other than Plaintiff and Releasing Parties, who intends to make demands or bring litigation based on the Released Claims against the Defendant.  Plaintiff and Releasing Parties further represent and warrant that none of them have been notified or otherwise informed of any such intention or consideration thereof.

16.   **Counterparts.**  The Parties agree that this Agreement may be executed in exact counterparts, each of which shall be deemed an original but both of which taken together shall constitute one and the same instrument. Any signature page delivered by facsimile transmission or e-mail shall be treated in all manner and respects as an original document.

17.   **Remedial Measures.** Within six (6) months after the Effective Date of this Agreement, Defendant shall create and include a hyper link on its Website titled *Notice of Accessibility* which directs end-users to a

**Page 5 of 11**

webpage with contact information for disabled individuals who have questions, concerns or difficulties using the Website.

By the end of 2020, Defendant shall improve the accessibility of its Website and provide individuals with visual disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website by having it substantially conform with WCAG 2.0 Level A as a guideline in making such improvements. The Parties further agree that Defendant can link to Third-Party Websites and shall not be responsible or liable for the state of their accessibility to individuals with disabilities.

If legislation is passed modifying Title III of the ADA or if the United States Department of Justice or any other federal government entity promulgates final ADA Title III regulations regarding website accessibility during the Term of this Agreement, this Agreement shall automatically, without further action by the Parties, be modified such that Defendant shall be required only to achieve the Website's and/or the New Website's (if created) compliance with the minimum requirements set forth in any such legislation or regulation within the timeframe for compliance set forth in such legislation or regulation.  The Parties shall meet and confer at the written request of either party to discuss whether modifications to the terms of this Agreement shall be made to be consistent with any such final statutes, regulations, or rules.

*[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]*

Dated: 3/10/2017

By: _____
Juan Carlos

Dated: 3/21/17

Brinker International, Inc.

By: _____
Name: Chris Carreen
Title: Corporate Counsel

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Civil Action Number: 1:16-cv-24805-RNS

JUAN CARLOS GIL,

      Plaintiff,

vs.

BRINKER INTERNATIONAL, INC., d/b/a
www.chilis.com,

      Defendant.

---

## CONSENT JUDGMENT

Plaintiff Juan Carlos Gil filed this action for declaratory and injunctive relief under Title III of the Americans With Disabilities Act and state law against Defendant Brinker International, Inc.  This matter arises under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, specifically, under Title III of the Americans With Disabilities Act, 42 U.S.C. §§s 12181-12189. The parties agree to the entry of this Order to resolve Plaintiff's claims in this matter.

    1.     As alleged in the Complaint, Plaintiff is legally blind and utilizes screen reader software to comprehend with information available on the internet and access websites.

    2.     Plaintiff alleged that he was unable to access and use the website, www.chilis.com (the "Website") but the Website did not integrate with his screen reader software and the Website did not have any other means of access for the visually impaired.

    3.     Defendant disputes the allegations in this instant action and denies that the Website is in violation of Title III of the ADA.

**Page 9 of 11**

4.     The Website is available to the general public and provides information regarding
Defendant's food menu and various locations for Defendant's restaurants which are places of
public accommodation.

5.     The ADA defines "places of public accommodation" as to ensure that disabled
individuals enjoy full and equal enjoyment of goods and services by making reasonable
modifications to its services.

6.     Whereas the Defendant disputes the allegations in this instant action, the
Defendant is in agreement to accommodate the visually impaired community and bring its
Website in compliance with Title III of the ADA; 42 U.S.C. §§s 12181-12189 and to bring such
compliance within a reasonable period of time, in a readily achievable manner.

Accordingly, Judgment is entered on Plaintiff's Complaint as follows:

a)   Within six (6) months after the Effective Date of this Agreement, Defendant shall
create and include a hyper link on its Website titled *Notice of Accessibility* which directs end-
users to a webpage with contact information for disabled individuals who have questions,
concerns or difficulties using the Websites.

b)   By the end of 2020, Defendant shall improve the accessibility of its Website and
provide individuals with visual disabilities full and equal enjoyment of the goods, services,
facilities, privileges, advantages, and accommodations offered through the Website by having it
substantially conform with WCAG 2.0 Level A as a guideline in making such improvements.
The Parties further agree that Defendant can link to Third-Party Websites and shall not be
responsible or liable for the state of their accessibility to individuals with disabilities.

**Page 10 of 11**

Dated: _____          ENTER:

 

 

                                      **ROBERT N SCOLA**
                                      **UNITED STATES DISTRICT JUDGE**

Agreed:

JUAN CARLOS GIL          BRINKER INTERNATIONAL, INC.

By:_____          By:_____
    Scott R. Dinin          Tasos C. Paindiris Esq.
    Scott R. Dinin, P.A.          JACKSON LEWIS P.C.
    4200 NW 7th Avenue          390 North Orange Avenue, Suite 1285
    Miami, Florida 33127          Orlando, Florida 32801
    Tel: 786-431-1333          Tel: 407-246-8440
    E-mail: inbox@dininlaw.com          Fax: 407246-8441
    *Attorney for the Plaintiff*          E-mail: Tasos.Paindiris@jacksonlewis.com
                                         *Attorneys for the Defendant*

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:17-CV-61265-BB

| | |
|---|---|
| DENNIS HAYNES, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BRINKER INTERNATIONAL, INC., | ) |
| Defendant. | ) |

AFFIDAVIT OF MICHAEL ERDMAN IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT BASED ON MOOTNESS BECAUSE OF AN
EXISTING REMEDIATION PLAN

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned authority, personally appeared Michael Erdman, who, after first being duly sworn, deposes and states that he is over 18 years of age and is competent to testify as to the following matters as to which he has personal knowledge:

1.     The information contained in this Affidavit is true and correct, and based on my personal knowledge and review of applicable business records. I provide this Affidavit in support of Brinker International Inc.'s ("Brinker") Motion to Dismiss the Complaint Based on Mootness Because of an Existing Remediation Plan.

2.     I am currently employed by Brinker as the IT Director – eCommerce and Digital Technology. I have been employed with Brinker since May 2015. I am not an external

expert that has been retained by Brinker or specially employed to provide expert testimony.  My duties do not involve giving expert testimony.

3.      Brinker owns and operates restaurants under the name of Chili's Grill & Bar.  Brinker also operates a website located at www.chilis.com (the "website").

4.      In November 2016, Brinker was subject to a lawsuit alleging that the website was inaccessible to blind customers in violation of Title III of the Americans with Disabilities Act ("ADA").  *See, Juan Carlos Gil v. Brinker International, Inc.*, Case No. 1:16-cv-24805-RNS (the "*Gil* Lawsuit").

5.      After the *Gil* Lawsuit was filed, Brinker reviewed its website and developed a comprehensive plan to improve the accessibility of the website (the "Remediation Plan").

6.      The Remediation Plan began on March 1, 2017.

7.      I oversaw the entire Remediation Plan for Brinker.  I have significant experience with the regards to redesigning websites to improve accessibility and usability.

8.      In accordance with the Remediation Plan, Brinker edited the website to comply with WCAG 2.0 Level A as follows:

(1)      Added page language attribute to all pages;

(2)      Added consistent page heading tags (h1, h2, h3, etc.);

(3)      Added label tags and/or title attributes on certain form elements;

(4)      Added alternative text on images;

(5)      Added title tag to each PDF;

(6)      Removed any blank ALT text from figures and images in PDF documents;

(7)     Confirmed that IMG ALT text is not the same as the image file name;

(8)     Added Language to Document Properties in Adobe Acrobat; and

(9)     Used Heading 1, Heading 2, and Heading 3 styles.

9.      Brinker released the updated website on April 18, 2017.

10.     Therefore, as of April 18, 2017, I believe the website is accessible and in compliance with WCAG 2.0 Level A.

11.     Further, on July 19, 2017, Brinker placed an accessibility notice on its website. *See* https://www.chilis.com/web-accessibility.

12.     To date, I believe the website remains accessible and in compliance with WCAG 2.0 Level A.

13.     Brinker plans to continuously monitor the website and address issues relating to accessibility as it becomes aware of them.

_____
MICHAEL ERDMAN

STATE OF _Texas_____

COUNTY OF _Dallas_____


        The foregoing instrument was acknowledged before me this 4th day of
_August_____, 2017, by _Michael Erdman_ who is personally known to me or
has produced _____n/a_____ as identification.

(SEAL)

_____

Notary Public-State of _Texas_

Commission Number: _116 9975-3_

R. ANNE YOUNG
ID # 1169975-3
Notary Public, State of Texas
My Commission Expires
02/21/2021

# EXHIBIT C

**From:** Paindiris, Tasos C. (Orlando)
**Sent:** Sunday, July 30, 2017 2:23 PM
**To:** tbb@thomasbaconlaw.com; aaron@finesilverlaw.com
**Cc:** Sbert, Nicole A. (Orlando) <sbertn@jacksonlewis.com>
**Subject:** Haynes v. Brinker (chilis.com)

Attorneys Finesilver and Bacon,

Plaintiff Dennis Haynes is alleging that Brinker International's website, www.chilis.com (the "website"), violates the Americans with Disabilities Act ("ADA") by failing to interface with software utilized by visually impaired individuals.  As an initial matter, Mr. Haynes does not allege when he allegedly visited the website and therefore we are unable to determine whether his claims fall within the statute of limitations or what version of the website he was reviewing.  Moreover, and more importantly, the website is currently in the process of ADA compliance upgrades and has been since this lawsuit was filed on June 14, 2017.  Specifically, prior to this lawsuit Brinker commenced work on the website to bring it to WCAG 2.0 "Level A" compliance.  The following is a link to the chilis.com Web Accessibility statement: https://www.chilis.com/web-accessibility.  Brinker will continue to monitor and take measures to improve accessibility as appropriate.

Not only is the website in compliance, but it was previously the subject of a lawsuit making the same claims now made by Mr. Haynes.  On November 17, 2016 Juan Carlos Gil filed a lawsuit in the U.S. District Court for the Southern District of Florida, Case No. 1:16-cv-24805-RNS, alleging that the website was not accessible to visually impaired individuals in violation of the ADA.  Plaintiff recently identified this lawsuit in Plaintiff's Verified Statement Regarding Prior Filings Under the ADA filed with the Court on July 25, 2017 [DE 10].  Mr. Gil was represented by Attorney Scott Dinin.  The parties settled the case and entered into an Agreement executed by Brinker on March 21, 2017.  The Agreement requires Brinker, among other things, to place a notice of accessibility on the website and to have the website substantially conform with WCAG 2.0 Level A.  A copy of the Agreement with the payment provisions redacted is attached.  The case was dismissed on April 7, 2017.

Mr. Haynes should therefore immediately withdraw his lawsuit against Brinker because (a) Brinker has already commenced a remediation plan and in fact the website appears to be substantially in compliance; and (b) the settlement agreement in *Gil* resolves any claims made by Haynes in his lawsuit.  Plaintiff's claims are therefore moot.

As you are aware, Judge Scola granted Defendant's Motion to Dismiss when Mr. Haynes made the same claims against Hooters of America, LLC (Case No, 17-cv-60663-RNS dismissed on June 13, 2017 – copy attached).  In that case Mr. Haynes was making the same allegations against the same defendant as were made in a previous case that resulted in a settlement requiring modification to the website for ADA compliance.  The same scenario is present here and Brinker has already implemented its remedial plan to ensure the website is or will be in compliance.

There would be no reasonable basis for Mr. Haynes to characterize his claims as anything but identical to the previously filed *Gil v. Brinker* case. Brinker's contractual commitments in the *Gil* settlement resolve all of Mr. Haynes' claims. Mr. Haynes therefore already has everything to which he would be entitled if his lawsuit against Brinker was successful. As stated by Judge Scola in the *Hooters* decision, "[o]rdering [Defendant] to do what it has already agreed to do affords Haynes no meaningful relief." That is because there was a binding agreement for ADA compliance already in effect before Mr. Haynes filed his lawsuit. That is also the case here and Brinker has already taken measures to comply with that agreement.

Please confirm a soon as possible whether Mr. Haynes will withdraw his lawsuit against Brinker. If not, please explain the basis for Mr. Haynes' continuation of the case. Otherwise, Brinker intends to file a Motion to Dismiss Mr. Haynes' lawsuit and seek all available remedies.

Thank you.


**Tasos C. Paindiris**
Attorney at Law
**Jackson Lewis P.C.**
390 N. Orange Avenue
Suite 1285
Orlando, FL 32801
Direct: (407) 583-1602 | Main: (407) 246-8440 | Mobile: (954) 309-7666
Tasos.Paindiris@jacksonlewis.com  |  www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 and Global 100 law firm rankings.*

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is entered into by and between Juan Carlos Gil ("Plaintiff"), and Defendant Brinker International, Inc. ("Defendant") (collectively known as "Parties" and each individually a "Party"). The Agreement is effective on the date last signed by the Parties (the "Effective Date").

This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action as follows:

### RECITALS

**WHEREAS,** Plaintiff initiated a lawsuit in the United States District Court for the Southern District of Florida, Civil Action No. 1:16-cv-24805-RNS (the "Lawsuit") against the Defendant under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("Title III of the ADA") and Electronic Communications Privacy Act 18 U.S.C. § 2510 et. at., in which Plaintiff alleged that he was unable to access and use the website, www.chilis.com (the "Website") because it did not integrate with the screen reader software he was using and that the website did not provide other means of access for the visually impaired;

**WHEREAS,** Defendant disputes the allegations set forth above and in the Lawsuit and denies the Website is in violation of Title III of the ADA as well as all other allegations of wrongdoing; and

**WHEREAS,** the Parties desire to settle the Lawsuit and avoid further costs, and uncertainty of current or future litigation.

**NOW THEREFORE,** in consideration of the foregoing recitals, and the mutual promises, covenants and undertakings contained herein and incorporated into this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties HEREBY agree to the following terms and conditions as a full and complete settlement of the Lawsuit and any and all claims related to the Lawsuit:

1.    **Recitals.** The aforementioned Recitals are incorporated into this Agreement.

2.    **General Release.**   In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Plaintiff t, on behalf of himself and any of his agents, employees, representatives, assigns, heirs, executors, trustees, and partners (the "Releasing Persons"), hereby releases, acquits, satisfies, and forever discharges the Defendant named herein, together with the Defendant's parent and subsidiary entities; their respective officers, directors, servants, employees, agents, attorneys, members and constituents and

other representatives; and their underwriters and insurers ("Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits, including those arising from or relating to the Lawsuit or Plaintiff's alleged visits to the Website, which Plaintiff may have, may have had, or may hereafter raise against the Released Parties, whether known or unknown, including any violation of any United States, state, province, or local law, and any and all claims which were alleged or could have been alleged in the subject Lawsuit, including without limitation claims for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost including compensatory, punitive, and any other damages, if any, through the Effective Date of this Agreement ("Released Claims"), with the exception of the amount required to be paid by the Defendant pursuant to paragraph 3 of this Agreement.

3.   **Attorneys' Fees, Costs, Expenses, and Payments.**



**Page 2 of 11**

4.    **Confidentiality.**   The Parties and their respective counsel warrant that all the provisions of this Agreement will remain in strict confidence and that no copy of this Agreement shall be filed with any court, or disclosed to any persons or entities, except where disclosure is required by applicable law, court order or subpoena compelling disclosure.  The Parties and their counsel agree to refrain from making any statements about the Lawsuit, the allegations contained therein, or this Agreement.  The Parties may, however, in the ordinary course of business, disclose such information to its attorneys, accountants, boards, assignees, or prospective purchasers, to other persons as required to effectuate the terms of this Agreement.

5.    **Invalidation.**   If any provision of this Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of this Agreement shall remain in full force and effect, provided that the Parties may still effectively realize the complete benefit of the promises and considerations conferred hereby.

6.    **Scott R. Dinin, P.A.'s Obligation to Assist Defendant.**   For two (2) years from the Effective Date of this Agreement, if Defendant receives any inquiries or letters, threatened lawsuits or threatened investigations, or actual lawsuits or investigations from any parties after the Effective Date (including, without limitation, individuals, numerous individuals, purported classes, other counsel, advocacy groups, and/or government regulators) relating to the alleged inaccessibility of the Website, Scott R. Dinin, P.A. shall be obligated to use best, good faith efforts, at Defendant's written request, to assist and cooperate in the prevention of the additional website claims from being brought against Defendant, or to assist in extinguishing and/or achieving the dismissal, removal, or rescission of such additional potential website claims that may be brought against Defendant. These efforts shall include, but are not limited to: contacting the parties involved in the additional potential website claims (e.g., regarding terms of the Agreement Defendant approves for disclosure; Defendant's commitment to making the Website accessible; and Scott R. Dinin, P.A.'s reputation and experience with website accessibility matters); assisting in the preparation of necessary documentation (including, but not limited to, court or regulatory filings) and/or providing other reasonable or necessary assistance to Defendant (excluding travel that exceeds 25 miles from Miami, Florida 33127) should Scott R. Dinin, P.A. needs to explain this Agreement and its terms to another party,

regulator, or Court. The Parties agree that this obligation on Scott R. Dinin, P.A. is a material term of this Agreement and a primary consideration for Defendant entering into the Agreement.

7. **Drafting.** The Parties acknowledge that both Plaintiff and Defendant participated in drafting and reviewing this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting Party shall not be employed against either of the Parties in the interpretation of this Agreement.

8. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements and communications, whether written or oral, previously made in connection with the such matters. Any agreement to amend or modify the terms or provisions of this Agreement must be in writing and executed by both of the Parties hereto. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged.

9. **Non-Admission of Liability.** Neither this Agreement nor anything contained herein shall constitute or is to be construed as an admission by Defendant, any Released Parties, or any officer, contractor or agents of Defendant or any Released Parties of a violation of any federal, state or local statute, law, regulation, code, or ordinance (including Title III of the ADA), or any legal, common law or equitable duty owed by Defendant to anyone, or as evidence of any other liability, wrongdoing, or unlawful conduct. The Parties acknowledge that this Agreement has been entered into by the Parties to avoid the costs and expenses of continued litigation and to settle disputed claims and that Defendant had meritorious defenses to the Plaintiff's allegations.

10. **Dismissal/No Other Proceedings.** Plaintiff represents that he has not filed or participated in any complaints, claims or actions against Defendant or the Released Parties with any state, federal or local agency, court, or to their tribunal other than the Lawsuit, and that Plaintiff will not do so at any time hereafter regarding any other claims relating to the Website arising under the Title III of the ADA or any other statute, law, regulation, code or ordinance which may have arisen prior to the Effective Date. Within seven (7) days from the Effective Date of this Agreement, the Plaintiff expressly agrees to file a Consent Judgment (attached to this Agreement as Exhibit A). The Parties further agree that this Agreement shall not be filed with the Court, except as necessary for enforcement purposes, or unless otherwise required by the Court.

11.     **Binding Nature of Settlement Agreement.**  This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of each Party and to its respective heirs, administrators, representatives, executors, successors, and assigns.

12.     **Covenant Not to Sue.**  Plaintiff agrees that neither he, nor any other organization that he is or may be working with, or affiliated with, will commence, participate or assist in any action relating to Title III of the ADA or any other federal, state, or local statute, law regulation, code or ordinance, against the Defendant with respect to the Website. Plaintiff further agrees that he shall not at any time, directly or indirectly solicit or suggest to any third party that it commence any such action.

13.     **Authority.**  Each Party represents that each person, or authorized counsel, executing this Agreement on its behalf has been authorized to sign on behalf of the respective Party and to fully bind it to the terms of this Agreement and that the respective Parties have the power and authority to perform their respective obligations as provided by this Agreement.

14.     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and Title III of the ADA (where applicable) without regard to principles of conflicts of law. Any suit arising as a result of a breach of this Agreement shall be filed in the Federal Court for the United States for the Southern District of Florida.

15.     **No Knowledge of Potential Claimants.**  Plaintiff and Releasing Parties represent and warrant that none of them are aware of any potential plaintiff, putative class member, or counsel, other than Plaintiff and Releasing Parties, who intends to make demands or bring litigation based on the Released Claims against the Defendant.  Plaintiff and Releasing Parties further represent and warrant that none of them have been notified or otherwise informed of any such intention or consideration thereof.

16.     **Counterparts.**  The Parties agree that this Agreement may be executed in exact counterparts, each of which shall be deemed an original but both of which taken together shall constitute one and the same instrument. Any signature page delivered by facsimile transmission or e-mail shall be treated in all manner and respects as an original document.

17.     **Remedial Measures.** Within six (6) months after the Effective Date of this Agreement, Defendant shall create and include a hyper link on its Website titled *Notice of Accessibility* which directs end-users to a

**Page 5 of 11**

webpage with contact information for disabled individuals who have questions, concerns or difficulties using the Website.

By the end of 2020, Defendant shall improve the accessibility of its Website and provide individuals with visual disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website by having it substantially conform with WCAG 2.0 Level A as a guideline in making such improvements. The Parties further agree that Defendant can link to Third-Party Websites and shall not be responsible or liable for the state of their accessibility to individuals with disabilities.

If legislation is passed modifying Title III of the ADA or if the United States Department of Justice or any other federal government entity promulgates final ADA Title III regulations regarding website accessibility during the Term of this Agreement, this Agreement shall automatically, without further action by the Parties, be modified such that Defendant shall be required only to achieve the Website's and/or the New Website's (if created) compliance with the minimum requirements set forth in any such legislation or regulation within the timeframe for compliance set forth in such legislation or regulation.  The Parties shall meet and confer at the written request of either party to discuss whether modifications to the terms of this Agreement shall be made to be consistent with any such final statutes, regulations, or rules.

*[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]*

Dated: 3/10/2017

By: _____
Juan Carlos

Dated: 3/21/17

Brinker International, Inc.

By: _____
Name: Chris Green
Title: Corporate Counsel

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Civil Action Number:  1:16-cv-24805-RNS

JUAN CARLOS GIL,

      Plaintiff,

vs.

BRINKER  INTERNATIONAL,  INC.,  d/b/a
www.chilis.com,

      Defendant.

---

**CONSENT JUDGMENT**

Plaintiff Juan Carlos Gil filed this action for declaratory and injunctive relief under Title III of the

Americans With Disabilities Act and state law against Defendant Brinker International, Inc.  This

matter arises under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331,

specifically, under Title III of the Americans With Disabilities Act, 42 U.S.C. §§s 12181-12189.

The parties agree to the entry of this Order to resolve Plaintiff's claims in this matter.

      1.      As alleged in the Complaint, Plaintiff is legally blind and utilizes screen reader

software to comprehend with information available on the internet and access websites.

      2.      Plaintiff alleged that he was unable to access and use the website,

www.chilis.com (the "Website") but the Website did not integrate with his screen reader

software and the Website did not have any other means of access for the visually impaired.

      3.      Defendant disputes the allegations in this instant action and denies that the

Website is in violation of Title III of the ADA.

**Page 9 of 11**

4.      The Website is available to the general public and provides information regarding Defendant's food menu and various locations for Defendant's restaurants which are places of public accommodation.

5.      The ADA defines "places of public accommodation" as to ensure that disabled individuals enjoy full and equal enjoyment of goods and services by making reasonable modifications to its services.

6.      Whereas the Defendant disputes the allegations in this instant action, the Defendant is in agreement to accommodate the visually impaired community and bring its Website in compliance with Title III of the ADA; 42 U.S.C. §§s 12181-12189 and to bring such compliance within a reasonable period of time, in a readily achievable manner.

Accordingly, Judgment is entered on Plaintiff's Complaint as follows:

a)  Within six (6) months after the Effective Date of this Agreement, Defendant shall create and include a hyper link on its Website titled *Notice of Accessibility* which directs end-users to a webpage with contact information for disabled individuals who have questions, concerns or difficulties using the Websites.

b)  By the end of 2020, Defendant shall improve the accessibility of its Website and provide individuals with visual disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website by having it substantially conform with WCAG 2.0 Level A as a guideline in making such improvements. The Parties further agree that Defendant can link to Third-Party Websites and shall not be responsible or liable for the state of their accessibility to individuals with disabilities.

**Dated:** _____

**ENTER:**

_____
**ROBERT N SCOLA**
**UNITED STATES DISTRICT JUDGE**


Agreed:

JUAN CARLOS GIL

BRINKER INTERNATIONAL, INC.

By:_____
    Scott R. Dinin
    Scott R. Dinin, P.A.
    4200 NW 7th Avenue
    Miami, Florida 33127
    Tel: 786-431-1333
    E-mail: inbox@dininlaw.com
    *Attorney for the Plaintiff*

By:_____
Tasos C. Paindiris Esq.
JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Tel: 407-246-8440
Fax: 407246-8441
E-mail: Tasos.Paindiris@jacksonlewis.com
    *Attorneys for the Defendant*

United States District Court
for the
Southern District of Florida

Dennis Haynes, Plaintiff,　　　　　 )
　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　 )　Civil Action No. 17-60663-Civ-Scola
　　　　　　　　　　　　　　　　　 )
Hooters of America, LLC, Defendant.　)

## Order Granting Motion to Dismiss

Plaintiff Dennis Haynes complains that Defendant Hooters of America, LLC's website is inaccessible to blind customers like himself. (Compl., ECF No. 1.) Hooters contends that Haynes's case should be dismissed for a lack of subject-matter jurisdiction. (Def.'s Mot. to Dismiss, ECF No. 8.) According to Hooters, the complaint is moot based on a pre-existing remediation plan—which Hooters is in the process of implementing—as a result of a settlement between Hooters and a different plaintiff in an earlier-filed suit. In response, Haynes argues that (1) his rights are not impacted by the settlement agreement from the prior case and (2) that settlement agreement is, in any event, insufficient to moot his case. (Pl.'s Resp., ECF No 9.) The Court is persuaded by Hooters's argument and finds that, under these circumstances, Haynes's complaint is moot.

Prior to the initiation of this case, another, apparently unrelated plaintiff, filed a nearly identical, website-inaccessibility lawsuit against Hooters. *See Gomez v. Hooters of America, LLC*, Case No. 16-cv-23608-Altonaga, ECF No. 1, Compl. (S.D. Fla. Aug. 22, 2016). Less than three weeks after the filing of that case, the parties reached an agreement and settled their dispute on September 8, 2016. *Id.* at ECF No. 14, Not. of Settlement (Sep. 8, 2016). Less than a month after that, the plaintiff there filed a final stipulation of dismissal. *Id.* at ECF No. 16 (Oct. 5, 2016). The instant case has not progressed so smoothly.

Haynes does not dispute Hooters's characterization of his complaint as "identical" (Def.'s Mot. at 2) to the earlier-filed *Gomez* case. Nor does he dispute Hooters's representation that Haynes's counsel affirmed that he "would agree to the same remedial measures and timing for revising the [Hooters] website that are in the Gomez settlement" (*Id.* at 3, 7). Nonetheless Haynes insists on having his identical "claims [] heard on their merits" by this Court (Pl.'s Resp. at 5.)

In support of his position, Haynes presents two arguments. First, he complains that his rights should not be affected by a settlement agreement to which he was never a party. While it is true that Haynes cannot be bound by the *Gomez* settlement agreement, this does not mean that the settlement agreement has otherwise failed to resolve Haynes's claim. To the contrary, "[t]he existence of

the remedial plan," agreed to in the settlement, "mean[s] that [the] plaintiff has already. . . received everything to which he would be entitled, if his lawsuit were successful," leaving nothing for this Court to determine. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1378 (S.D. Fla. 2011) (King, J.) (quotations omitted). Haynes's argument that, generally, the filing of "a prior ADA lawsuit does not preclude subsequent plaintiffs from suing for similar violations" is inapplicable here. (Resp. at 3.) Where a prior identical, ADA-premises lawsuit has not only been filed but has been actually resolved before the filing of the second suit, this proposition may no longer apply. This is so where, as here, there ceases to be a live controversy: Hooters has agreed to remedy, in accordance with a binding settlement agreement in the *Gomez* case, all of the website inaccessibility issues Haynes complains of in this suit. Ordering Hooters to do what it has already agreed to do affords Haynes no meaningful relief. *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365 (S.D. Fla. 2006) (declining to exercise jurisdiction where "no effective relief can be granted"), *vacated and remanded* (per an agreement between the parties), 264 F. App'x 795 (11th Cir. 2008). That Haynes was not a party to the *Gomez* settlement agreement is irrelevant in this context.

Notwithstanding Hooters's agreement to remove its website's barriers to access as a result of the *Gomez* settlement, Haynes next submits his case is not actually mooted. According to Haynes, "a mere plan to fix an ADA violation is insufficient to moot a case." (Resp. at 5.) Haynes describes Hooters as "only in the process of fixing [its] ADA violations." (*Id.*) The Court's view of the status of Hooters's remedial efforts, however, differs from Haynes' characterization. Here, Hooters's agreement for ADA compliance was already in effect before Haynes filed his lawsuit. This plan is in accordance with a binding settlement agreement, entered into as a result of the *Gomez* litigation. Haynes does not dispute that Hooters is in compliance with its obligations under that agreement and that Hooters has already complied with the first phase of the remediation. There is additionally no dispute that Haynes's counsel has also declared that he "would agree to the same remedial measures and timing for revising the website that are in the Gomez settlement." Based on these findings, the Court finds it "clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Casa Marina*, 458 F. Supp. 2d at 1365 (citing *Buckhannon v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001)). Haynes's description of the remediation as being "only in process" and "a mere plan" understates Hooters's progress. Further, Haynes's concerns that Hooters may revert to its prior discriminatory practices and that there are "no assurances . . . that Hooters will remain ADA compliant" is true in any ADA case. *But see Kallen*, 775 F. Supp. 2d at 1379 ("It is untenable for [p]laintiff to suggest that once the renovations are

completed they could be undone.") In this case, presented in this posture, without any allegations that the relief requested by Haynes differs in any way from the relief addressed by the *Gomez* settlement, the Court finds no live controversy warranting the Court's intervention.

The Court therefore **grants** Hooters's motion to dismiss (**ECF No. 8**) and **dismisses** Haynes's complaint, albeit without prejudice, for lack of jurisdiction due to mootness. The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on June 13, 2017.

Robert N. Scola, Jr.
United States District Judge

# EXHIBIT D

**From:** Paindiris, Tasos C. (Orlando)
**Sent:** Friday, August 04, 2017 12:56 PM
**To:** Aaron Finesilver <aaron@finesilverlaw.com>; tbb@thomasbaconlaw.com
**Cc:** Sbert, Nicole A. (Orlando) <sbertn@jacksonlewis.com>
**Subject:** RE: Haynes v. Brinker (chilis.com) 5660

Aaron,

My client does not accept Plaintiff's settlement offer and sees no reason to pay Plaintiff's fees or costs in this case. Brinker has not only taken steps toward a remediation plan for the website, but it believes the modifications made earlier this year have removed the barriers to access alleged in the Complaint or at least substantially removed them. Of course we would not know if your client is still have problems accessing the site. I asked you in my last email if your client is still have trouble accessing the site's features and you did not respond. Additionally, I have asked twice if you would provide the date(s) your client visited the website but you do not seem willing to provide this information.

In light of the case on point in this jurisdiction supporting a Motion to Dismiss and Brinker's belief that the modifications have already removed barriers to access Brinker will proceed with its Motion unless Plaintiff withdraws the lawsuit. If Plaintiff withdraws the lawsuit today Brinker will agree not to seek its fees and costs from Plaintiff. Otherwise, Brinker will file a Motion to Dismiss and reserves the right to seek fees and costs from the Court.


**Tasos C. Paindiris**
Attorney at Law
**Jackson Lewis P.C.**
390 N. Orange Avenue
Suite 1285
Orlando, FL 32801
Direct: (407) 583-1602 | Main: (407) 246-8440 | Mobile: (954) 309-7666
Tasos.Paindiris@jacksonlewis.com  |  www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 and Global 100 law firm rankings.*

**From:** Paindiris, Tasos C. (Orlando)
**Sent:** Wednesday, August 02, 2017 11:57 AM
**To:** 'Aaron Finesilver' <aaron@finesilverlaw.com>; tbb@thomasbaconlaw.com
**Cc:** Sbert, Nicole A. (Orlando) <sbertn@jacksonlewis.com>
**Subject:** RE: Haynes v. Brinker (chilis.com) 5660

Aaron,

I thought I attached the previous settlement agreement to my earlier emails but I've attached it here for your review. I am aware of the appeal but we think Judge Scola's reasoning is sound, particularly in the context of an ADA case involving a website. Brinker is compliance with the prior settlement agreement because it has taken action toward the

agreement's requirements but the deadline established by the agreement has not yet passed.  Nevertheless, Brinker believes its site is in compliance and I would be curious to know if your client is still have trouble accessing its features.  Additionally, I asked if you would provide the date(s) your client visited the website.  Please let me know if you will do so.  In the meantime, I will discuss your proposed Agreement with my client.

Regards,

**From:** Aaron Finesilver [mailto:aaron@finesilverlaw.com]
**Sent:** Wednesday, August 02, 2017 10:20 AM
**To:** Paindiris, Tasos C. (Orlando) <Tasos.Paindiris@jacksonlewis.com>; tbb@thomasbaconlaw.com
**Cc:** Sbert, Nicole A. (Orlando) <sbertn@jacksonlewis.com>
**Subject:** RE: Haynes v. Brinker (chilis.com) 5660

Tasos,

I was just in the process of writing you back.

First, please provide any previous settlement agreements for our review.

Second, as I'm sure you saw while doing your research, the Hooters case is currently on appeal to the Eleventh Circuit and we are confident it will be overturned.  In Hooters, the prior settlement was not a class action and our client was not involved in the prior settlement.  It is well settled that one person's settlement agreement has no impact on the rights of unrelated individuals.  As a result, Judge Scola's ruling goes against the weight of the supreme court, eleventh circuit and Southern District Court precedent.  In the event that another court rules as Judge Scola did, we will simply bring that case on appeal too so the Eleventh Circuit can decide both matters.

Third, in your email, your indicated you both were compliant with the prior settlement agreement and still in the process of remediating the website.  Please clarify this for me because it seems contradictory.

Lastly, Plaintiff demands his own settlement agreement that he can enforce without have the rely on others.  I have attached an agreement for your review.  Please let me know whether your client accepts this offer to resolve the litigation early.  In the even you want to discuss the Hooters case or any issue further, please let me know.

Thanks,


Aaron Finesilver



Book an appointment:
www.meetme.so/finesilverlaw

New World Tower
100 N. Biscayne Boulevard, Suite 1300
Miami, FL 33132
Phone: 305-702-8355
Fax: 305-503-7374
Website: www.Finesilverlaw.com

🖶 Please consider the environment before printing this email

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail communication and any attachments, if any, are protected by the Electronic Communications Privacy Act, 18 U.S.C. 2510, *et seq.* The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to info@finesilverlaw.com.

**From:** Paindiris, Tasos C. (Orlando) [mailto:Tasos.Paindiris@jacksonlewis.com]
**Sent:** Wednesday, August 2, 2017 9:42 AM
**To:** tbb@thomasbaconlaw.com; Aaron Finesilver <aaron@finesilverlaw.com>
**Cc:** Sbert, Nicole A. (Orlando) <sbertn@jacksonlewis.com>
**Subject:** FW: Haynes v. Brinker (chilis.com)

Good morning. I am writing to follow up on the below email correspondence. Please confirm a soon as possible whether Mr. Haynes will withdraw his lawsuit against Brinker in light of the information below and attached. If not, please explain the basis for Mr. Haynes' continuation of the case as Brinker's Motion to Dismiss is due Friday. Thank you.


**Tasos C. Paindiris**
Attorney at Law
**Jackson Lewis P.C.**
390 N. Orange Avenue
Suite 1285
Orlando, FL 32801
Direct: (407) 583-1602 | Main: (407) 246-8440 | Mobile: (954) 309-7666
Tasos.Paindiris@jacksonlewis.com | www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 and Global 100 law firm rankings.*


**From:** Paindiris, Tasos C. (Orlando)
**Sent:** Sunday, July 30, 2017 2:22 PM
**To:** tbb@thomasbaconlaw.com; aaron@finesilverlaw.com
**Cc:** Sbert, Nicole A. (Orlando) (sbertn@jacksonlewis.com) <sbertn@jacksonlewis.com>
**Subject:** Haynes v. Brinker (chilis.com)

Attorneys Finesilver and Bacon,

Plaintiff Dennis Haynes is alleging that Brinker International's website, www.chilis.com (the "website"), violates the Americans with Disabilities Act ("ADA") by failing to interface with software utilized by visually impaired individuals. As an initial matter, Mr. Haynes does not allege when he allegedly visited the website and therefore we are unable to determine whether his claims fall within the statute of limitations or what version of the website he was reviewing. Moreover, and more importantly, the website is currently in the process of ADA compliance upgrades and has been since this lawsuit was filed on June 14, 2017. Specifically, prior to this lawsuit Brinker commenced work on the website to bring it to WCAG 2.0 "Level A"

compliance. The following is a link to the chilis.com Web Accessibility statement: https://www.chilis.com/web-accessibility. Brinker will continue to monitor and take measures to improve accessibility as appropriate.

Not only is the website in compliance, but it was previously the subject of a lawsuit making the same claims now made by Mr. Haynes. On November 17, 2016 Juan Carlos Gil filed a lawsuit in the U.S. District Court for the Southern District of Florida, Case No. 1:16-cv-24805-RNS, alleging that the website was not accessible to visually impaired individuals in violation of the ADA. Plaintiff recently identified this lawsuit in Plaintiff's Verified Statement Regarding Prior Filings Under the ADA filed with the Court on July 25, 2017 [DE 10]. Mr. Gil was represented by Attorney Scott Dinin. The parties settled the case and entered into an Agreement executed by Brinker on March 21, 2017. The Agreement requires Brinker, among other things, to place a notice of accessibility on the website and to have the website substantially conform with WCAG 2.0 Level A. A copy of the Agreement with the payment provisions redacted is attached. The case was dismissed on April 7, 2017.

Mr. Haynes should therefore immediately withdraw his lawsuit against Brinker because (a) Brinker has already commenced a remediation plan and in fact the website appears to be substantially in compliance; and (b) the settlement agreement in *Gil* resolves any claims made by Haynes in his lawsuit. Plaintiff's claims are therefore moot.

As you are aware, Judge Scola granted Defendant's Motion to Dismiss when Mr. Haynes made the same claims against Hooters of America, LLC (Case No, 17-cv-60663-RNS dismissed on June 13, 2017 – copy attached). In that case Mr. Haynes was making the same allegations against the same defendant as were made in a previous case that resulted in a settlement requiring modification to the website for ADA compliance. The same scenario is present here and Brinker has already implemented its remedial plan to ensure the website is or will be in compliance.

There would be no reasonable basis for Mr. Haynes to characterize his claims as anything but identical to the previously filed *Gil v. Brinker* case. Brinker's contractual commitments in the *Gil* settlement resolve all of Mr. Haynes' claims. Mr. Haynes therefore already has everything to which he would be entitled if his lawsuit against Brinker was successful. As stated by Judge Scola in the *Hooters* decision, "[o]rdering [Defendant] to do what it has already agreed to do affords Haynes no meaningful relief." That is because there was a binding agreement for ADA compliance already in effect before Mr. Haynes filed his lawsuit. That is also the case here and Brinker has already taken measures to comply with that agreement.

Please confirm a soon as possible whether Mr. Haynes will withdraw his lawsuit against Brinker. If not, please explain the basis for Mr. Haynes' continuation of the case. Otherwise, Brinker intends to file a Motion to Dismiss Mr. Haynes' lawsuit and seek all available remedies.

Thank you.

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.