UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-61265-BLOOM/Valle

DENNIS HAYNES,

    Plaintiff,
v.

BRINKER INTERNATIONAL, INC.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Brinker International, Inc.'s ("Defendant" or "Brinker") Motion to Dismiss the Complaint Based on Mootness, ECF No. [13] (the "Motion"), seeking dismissal of Plaintiff Dennis Haynes' ("Plaintiff" or "Haynes") Complaint, ECF No. [1]. The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons set out below, the Motion is granted and this matter is dismissed without prejudice.

**I. BACKGROUND**

On June 27, 2017, Haynes filed a Complaint against Brinker asserting violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181. *et seq.*, based on his claim that a website owned and operated by Brinker—located at www.chilis.com (the "Website")—is inaccessible to visually impaired individuals such as himself. *See* ECF No. [1]. Of particular import here is Haynes' request for an injunction that would require Brinker to alter its website to make it fully accessible to the visually impaired. *See id.* at 10-11.

As indicated in the Motion, prior to the commencement of this lawsuit, an unrelated plaintiff filed an essentially identical lawsuit against Brinker in this district based on the alleged

inaccessibility of the Website. *See Gil v. Brinker International, Inc.*, Case No. 16-cv-24805-RNS (S.D. Fla. Nov. 17, 2016) at ECF No. [1]. Approximately three months after that lawsuit was filed, the parties reached a settlement agreement. *See id.* at ECF No. [10]. Following the plaintiff's subsequent filing of a proposed consent judgment—which the *Gil* Court noted but did not adopt—a final Order of Dismissal was entered on April 7, 2017. *See id.* at ECF No. [15]. As part of the settlement agreement reached in *Gil*, which is attached to the Motion, Brinker agreed to take efforts in improving the accessibility of the Website by a certain deadline. *See* ECF No. [13], Exh. A. On April 18, 2017, pursuant to the "remediation plan" contemplated in the settlement agreement, Brinker released an updated version of the Website. *See* ECF No. [13] at 3. Brinker maintains that it continuously monitors the Website and will address "issues relating to accessibility as it becomes aware of them." *Id.*

Through its Motion, Brinker contends that, based on the above, this case should be dismissed for lack of subject-matter jurisdiction. More specifically, according to Brinker, given its implementation of the remediation plan it developed following the settlement of the *Gil* case—which Brinker asserts is identical to this case—there is currently "no live case or controversy[.]" *Id.* at 2. Haynes counters with three arguments: (1) his rights are not impacted by the settlement agreement from the prior case; (2) a mere plan to remediate an ADA violation cannot render a related ADA matter moot; and (3) ADA cases involving websites are, in any event, never subject to mootness because "the content and coding are ever changing and constantly updated." ECF No. [21] at 2. The Court agrees with Brinker and finds that Haynes' Complaint is moot.

## II. DISCUSSION

The circumstances of this case are on all fours with the circumstances of a recent case that, like this one, was filed by Haynes in this district. In *Haynes v. Hooters of Am., LLC*, 2017 WL 2579044, at *1 (S.D. Fla. June 14, 2017), Haynes alleged that the website at issue was inaccessible to the blind and therefore in violation of the ADA, but the defendant argued that the case was moot because of a "pre-existing remediation plan . . . [that it was] in the process of implementing[] as a result of a settlement between [the defendant] and a different plaintiff in an earlier-filed suit." Judge Scola agreed with the defendant and dismissed Haynes' complaint for lack of jurisdiction due to mootness, and in doing so, observed that Haynes' complaint was "identical" to the complaint in the earlier-filed case. *Id.* Like Haynes' first argument here, Haynes argued in *Hooters* that his rights should not be affected by a settlement agreement to which he was never a party. *Id.* Judge Scola rejected that argument, reasoning as follows:

> While it is true that Haynes cannot be bound by the *Gomez* settlement agreement, this does not mean that the settlement agreement has otherwise failed to resolve Haynes's claim. To the contrary, "[t]he existence of the remedial plan," agreed to in the settlement, "mean[s] that [the] plaintiff has already ... received everything to which he would be entitled, if his lawsuit were successful," leaving nothing for this Court to determine. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1378 (S.D. Fla. 2011) (King, J.) (quotations omitted). Haynes's argument that, generally, the filing of "a prior ADA lawsuit does not preclude subsequent plaintiffs from suing for similar violations" is inapplicable here. (Resp. at 3.) Where a prior identical, ADA-premises lawsuit has not only been filed but has been actually resolved before the filing of the second suit, this proposition may no longer apply. This is so where, as here, there ceases to be a live controversy: Hooters has agreed to remedy, in accordance with a binding settlement agreement in the *Gomez* case, all of the website inaccessibility issues Haynes complains of in this suit. Ordering Hooters to do what it has already agreed to do affords Haynes no meaningful relief. *Access 4 All, Inc. v. Casa Marina Owner, LLC*, 458 F. Supp. 2d 1359, 1365 (S.D. Fla. 2006) (declining to exercise jurisdiction where "no effective relief can be granted"), *vacated and remanded* (per an agreement between the parties), 264 Fed.Appx. 795 (11th Cir. 2008). That Haynes was not a party to the *Gomez* settlement agreement is irrelevant in this context.

*Id.* The Court finds Judge Scola's reasoning in *Hooters* to be persuasive and equally applicable in this case.

Haynes nevertheless "disagrees" with the *Hooters* decision because, in his view, it "mistakenly determined that [the] plaintiff was seeking the same relief as was in the confidential agreement." ECF No. [21] at 6.[1] Haynes argues that, by contrast, he seeks in this case "different relief that [sic] what parties [sic] agreed to in the Gil Lawsuit agreement, making the Hooters Order inapplicable." *Id.* But Haynes offers no support or further explanation for this conclusory assertion. Moreover, this claim is belied by a simple comparison of the Complaint and the settlement agreement in *Gil*. *Compare, e.g.*, ECF No. [1] at ¶ 11 ("Defendant has violated the . . . . ADA by failing to interface its website [(the Website)] with software utilized by visually impaired individuals."), *with* ECF No. [13], Exh. A at 1 ("Plaintiff alleged that he was unable to access and use the website, www.chilis.com [] because it did not integrate with the screen reader software he was using and that the website did not provide other means of access for the visually impaired."). As was the case in *Hooters*, Brinker has agreed to remedy, in accordance with the binding settlement agreement reached in *Gil*, the inaccessibility issue Haynes complains of in this lawsuit. In turn, nothing is left for this Court to determine. Even if this lawsuit were successful, the Court could only order Brinker to do that which it has already agreed and undertaken to do.[2] In this sense, Haynes' argument that his rights should not be affected by a settlement agreement to which he was not a party is a misnomer, as his rights are affected in this

---

[1] Haynes has appealed the *Hooters* decision, and the appeal remains pending as of the date of this Order.
[2] To the extent that Haynes claims that he has "encountered barriers to access on Defendant's website despite the prior settlement[,]" ECF No. [21] at 7, part of the settlement agreement in *Gil* requires Brinker to place a "Notice of Accessibility" on the Website that "directs end-users to a webpage with contact information for disabled individuals who have questions, concerns or difficulties using the Website." ECF No. [13], Exh. A at 6. It is undisputed that Brinker has fully complied with this requirement of the settlement agreement.

context only in the sense that the relief he seeks—which has everything to do with the Website—cannot be effectively or meaningfully granted.

Haynes' second argument is that, generally, "a mere plan to fix an ADA violation is insufficient to moot a case." ECF No. [21] at 10. This argument was also made in the *Hooters* case, and Judge Scola rejected it. 2017 WL 2579044, at *2. Judge Scola reasoned that Haynes' description of the remediation in that case as being "only in process" and "a mere plan" actually "understate[d] Hooter's progress." *Id.* Judge Scola emphasized that the remediation plan was "in accordance with a binding settlement agreement" and that the defendant had at that point "already complied with the first phase of the remediation." *Id.* The same logic applies here, as Brinker has, in accordance with the binding settlement agreement in *Gil*, actually updated the Website and placed on it an accessibility notice. In the Court's view, these circumstances ensure "that the allegedly wrongful behavior could not reasonably be expected to recur."[3] *Id.* (quoting *Casa Marina*, 458 F. Supp. 2d at 1365).

Relatedly, on a more specific level, Haynes takes issue with the content of the settlement agreement in *Gil*, arguing that it is fundamentally flawed and illusory. ECF No. [21] at 7-10. As an example, Haynes points out that the settlement agreement only requires Brinker to use the Web Content Accessibility Guidelines ("WCAG") as a "guideline" in making improvements and

---

[3] The cases relied upon by Haynes are distinguishable in one important respect—they did not deal with a remediation plan developed prior to litigation in conjunction with a binding and *enforceable* settlement agreement. For example, in *Larkin v. Envoy Orlando Holdings LLC*, 116 F. Supp. 3d 1316, 1319 (M.D. Fla. 2015), the court found at the summary judgment stage that the defendant's assurance that it was "in the process of fixing the violations [did] not render [the] case moot . . . ." *See also Access for the Disabled, Inc. v. Caplan*, Case No. 01-cv-7310-AJ (S.D. Fla. Sept. 16, 2002) at ECF No. [40] ("Mr. Caplan has submitted architectural plans to the City . . . that would bring the parking lot into compliance. A claim for injunctive relief, however, is moot only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur, and a defendant claiming that its *voluntary compliance* moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.") (citation and internal quotation marks omitted) (emphasis added). In this case, the allegedly wrongful behavior could not reasonably be expected to recur because a binding and enforceable settlement agreement—rather than Brinker's mere voluntary compliance to a planned remediation—mandates such.

to only "substantially conform" with the WCAG. *Id.* at 9 (citing ECF No. [13], Exh. A at ¶ 17). According to Haynes, this "qualified" and "vague" language renders the settlement agreement subject to Brinker's "own subjective whims and self-serving interpretations." *Id.* The Court is not convinced. In addition to requiring substantial conformance with the WCAG, the settlement agreement unequivocally requires Brinker to ensure that the Website "provide[s] individuals with visual disabilities *full and equal enjoyment* of the goods, services, facilities, privileges, advantages, and accommodations offered through the Website . . . ." ECF No. [13], Exh. A at ¶ 17 (emphasis added). In the Court's view, Brinker's obligation to establish for the visually impaired "full and equal enjoyment" of the Website precludes any whimsical and self-serving determinations by Brinker.

As another example of the purportedly flawed and illusory nature of the settlement agreement, Haynes argues the following:

> [I]n the event of a breach, it is doubtful the settlement agreement could be enforced through court action. Although the parties sought court approval for a consent decree with the remediation terms, the federal court declined to enter the order and eventually dismiss [sic] the action due to a lack of prosecution. As a result, the district court failed to retain jurisdiction to enforce the agreement.

ECF No. [21] at 10. Haynes is correct that the *Gil* court did not approve or adopt the proposed consent judgment filed by the plaintiff. *See Gil v. Brinker International, Inc.*, Case No. 16-cv-24805-RNS (S.D. Fla. Apr. 7, 2017) at ECF No. [15] (explaining that the ADA does not require court approval or ratification of settlements between litigants). However, Haynes representation that the *Gil* court failed to retain jurisdiction to enforce the settlement agreement is disingenuous at best. *See id.* ("[T]he Court declines Gil's invitation to sign the judgment and the order. . . . The Court will, however, reserve jurisdiction to enforce the parties' settlement agreement.").

That the binding settlement agreement in *Gil* is subject to judicial enforcement further evinces that there is no live controversy warranting this Court's intervention.[4]

Finally, regarding his argument that ADA cases involving websites can never be subject to mootness, Haynes distinguishes ADA cases dealing with physical structures by stating that "websites are fluid[,] . . . constantly revised, updated, [and] edited . . . ." ECF No. [21] at 13. Haynes elaborates, "[a] website that is compliant one day may become completely non-compliant the next day, unlike ADA cases where there are remediations done to a physical structure." *Id.* Aside from the fact that this argument relies exclusively on conjecture about future updates a website such as the Website might employ, the settlement agreement in *Gil* appears to address this very concern. In Haynes' own words, he is "entitled to injunctive relief requiring Defendant to maintain [the Website] in compliant condition." ECF No. [21] at 14. The settlement agreement provides exactly that, by requiring Brinker to "provide individuals with visual disabilities *full* and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations *offered through the Website* . . . ." ECF No. [13], Exh. A at ¶ 17 (emphasis added). The Court reads this provision as contractually binding Brinker to ensure that all aspects of the Website are ADA compliant. In the event that a new page were added to the Website that was inaccessible to visually impaired individuals, Brinker would not be meeting its obligation under the settlement agreement to provide such individuals with full enjoyment of

---

[4] Haynes also argues that the settlement agreement should not preclude his claim because counsel for the plaintiff in *Gil* "does not adequately represent the class of visually impaired individuals through the settlement." ECF No. [21] at 7. Haynes points out that the *Gil* lawsuit "was never certified as a class action" and the settlement agreement "followed none of the procedural requirements and safeguards governing class certification, such as notice to the affected class and opportunity to opt out or object." *Id.* at 7-8. But Brinker does not take the position that the settlement agreement was the result of a class settlement, nor does Brinker seek to enforce the settlement agreement against Haynes. Rather, as explained, the settlement agreement and the implementation of the remediation plan render moot the specific relief Haynes' claim seeks.

Case 0:17-cv-61265-BB   Document 32   Entered on FLSD Docket 09/29/2017   Page 8 of 8

Case No. 17-cv-61265-BLOOM/Valle

the Website's offerings.[5]  Importantly, and as discussed, that obligation—like the settlement agreement as a whole—is subject to judicial enforcement.[6]

## III.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, **ECF No. [13]**, is **GRANTED**.  The Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to mootness.  Any pending motions are **DENIED as moot**.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 28th day of September, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[5] Even Brinker recognizes this.  *See* ECF No. [22] at 9 ("[T]he *Gil* agreement requires Defendant to *continually and indefinitely* 'provide' equal access to its website.") (emphasis added).

[6] In this sense, the cases relied upon by Haynes are again distinguishable. For example, in *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1192-93 (N.D. Cal. 2007), the court rejected the argument that the plaintiff's claims were moot on the basis that the defendant had made several accessibility improvements to its website during the pendency of the litigation. Aside from the fact that the improvements were not complete, the court noted that "the continuous addition of new pages to Target.com argue[d] against a mootness finding." *Id.* at 1193. Tellingly, the court concluded that the defendant's "*voluntary cessation* of allegedly illegal conduct … [did] not make the case moot." *Id.* (citation omitted) (emphasis added).  Here, by contrast, it is a binding settlement agreement subject to judicial enforcement—rather than voluntary cessation—that renders this case moot.